**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Gurrola,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-18-00007-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, p. 1)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* Fed. R. Civ. P. 73; (Doc. 12)

The ALJ's decision to give little weight to the report from the treating physician, Dr. Bacchus-Morris, is not supported by specific and legitimate reasons. His decision to give little weight to plaintiff Gurrola's subjective symptom testimony is not supported by clear and convincing reasons. The court does not reach Gurrola's alternate claims of error. The case is remanded for payment of benefits.

Procedural History

On October 23, 2013, the plaintiff, Sarah Gurrola, filed an application for disability insurance benefits pursuant to Title II and supplemental security income

pursuant to Title XVI of the Social Security Act. (Doc. 14-6, pp. 2-15) She alleged disability beginning April 1, 2010 stemming from lupus, fatigue, rheumatoid arthritis, depression, fibromyalgia, and anxiety. (Doc. 14-7, pp. 11-12) She later reported that she is also disabled due to migraines. (Doc. 14-7, p. 43) Her claims were denied initially on April 11, 2014 and again on reconsideration on September 18, 2014. (Doc. 14-5, pp. 2-5, 7-10, 16-21) Gurrola appeared with counsel at a hearing before Administrative Law Judge Charles Davis on April 25, 2016. (Doc. 14-3, pp. 32, 34) He denied her claim on July 25, 2016. (Doc. 14-3, p. 13) Gurrola filed a Request for Review with the Appeals Council on September 7, 2016. (Doc. 14-3, pp. 2, 6) The Appeals Counsel denied her request on November 24, 2017 making the decision of the ALJ the final decision of the Commissioner. (Doc. 14-3, pp. 2, 6)

### Claimant Work History and Medical History

Gurrola was born in June of 1979. (Doc. 14-4, p. 4) She was 30 years old on the alleged disability onset date and 36 when the ALJ issued his decision in April of 2016. *Id*. She is a high school graduate. (Doc. 14-7, p. 12)

On April 1, 2010, Gurrola left her last full-time job as an office processing manager for an auto glass replacement company. (Doc. 14-3, p. 36); (Doc. 14-7, p. 12) She testified that she "had to leave [her] job and couldn't work anymore." (Doc. 14-3, p. 36) In August of 2013, Gurrola was involved in a serious motor vehicle accident. (Doc. 14-9, p. 46) She sustained multiple fractures to her pelvis and spine and developed chronic pain. *Id*. Since then, she worked briefly as an office worker on a part-time basis for two hours per day. *Id*.; (Doc. 14-3, p. 43); (Tr. 42); (Doc. 14-7, p. 12); (Tr. 249) She was discharged because she was not reliable enough. (Doc. 14-3, p. 37)

*Impairments*

Nancy Armstrong, M.D., and Ralph Robinowitz, Ph.D., evaluated Gurrola's initial claim for the disability determination service. (Doc. 14-4 pp. 2-28) They diagnosed her

with systemic lupus erythematosus, disorders of the back, obesity and affective disorders. *Id*. at 8

Robinowitz completed Gurrola's psychiatric review on April 8, 2014. (Doc. 14-4, p. 10) He found that she has a medically determinable mental impairment that does not precisely satisfy the "A" diagnostic criteria for an affective disorder. *Id*. at 9 Under the 'B' criteria, he found that the disorder imposed mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id*. He found no repeated extended episodes of decompensation. *Id*. He also found that the impairment did not satisfy the 'C' criteria of the listings. *Id*.

Armstrong evaluated Gurrola's physical residual functional capacity (RFC) on February 13, 2014. (Doc. 14-4, pp. 11-13) She indicated that Gurrola could frequently lift or carry 10 pounds and occasionally 20 pounds. *Id*. Gurrola could stand or walk for a total of four hours and sit for six hours out of an eight-hour day. *Id*. Gurrola could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds and could only occasionally stoop, kneel, crouch, or crawl due to her morbid obesity. *Id*. at 11-12

In September of 2014, Nathan Strause, M.D., and Eric Penner, Ph.D., evaluated Gurrola's claim for the disability determination service on reconsideration. They found the same impairments that were present during her first evaluation. (Doc. 14-4, pp. 38-41, 52-56)

Penner's findings on the psychiatric criteria were identical to Robinowitz's. (Doc. 14-4, p. 38) Strause's findings on her physical RFC were identical to Armstrong's except he noted that "alternation of positions of sitting should be accommodated in normal wor[k] day with usual breaks and lunch." *Id*. at 40-41.

Previously, on June 12, 2014, Gurrola's treating physician, Amanda Bacchus-Morris, M.D., completed a Physical Residual Functional Capacity Assessment. (Doc. 14-9, p. 46); (Doc. 14-10, p. 43) She opined that Gurrola could stand for 2 hours or less during an 8-hour day and sit for 30-60 minutes at a time. (Doc. 14-10, p. 43) She could

walk one block at one time before needing to stop. *Id*. She could lift and carry 10 pounds occasionally. *Id*. She would be unable to work more than five days per month due to her impairments. *Id*.

*Hearing*

Gurrola appeared with counsel at a hearing before the ALJ on April 25, 2016. (Doc. 14-3, p. 34) She explained that her last full time job was in 2010, working as an office manager at an auto glass shop. (Doc. 14-3, p. 38) After that, she worked at a Cox call center "for about two weeks." *Id*.

In 2014, Gurrola had another part-time job doing office work for an electrician. (Doc. 14-3, pp. 36-37, 43) She was "matching up billing, [doing] data entry, [and] filing" for one to four hours a day. *Id*. at 37 She could not work full-time because on some mornings she would have "a headache so bad [she could] not see straight," or might be "sick and nauseous and vomiting." *Id*. She also testified that there are "times [she] can't move [her] arms very well at all and just [has] overall sick feeling and pain." *Id*. She was discharged because she was not reliable enough. *Id*.

Gurrola believes that pain and nausea prevents her from working now. (Doc. 14-3, pp. 37-38) Also, her "cognitive abilities are not all there as well." *Id*. at 38 "It's very hard for [her] to concentrate and stay focused, [and] sit, [and] stand." *Id*. at 38

Gurrola lives with her seventeen-year-old daughter and five-year-old son. (Doc. 14-3, p. 39) Her son is with her Friday afternoon through Monday evening. *Id*. at 39-40 During the day, she tries to keep the house tidy and "take care of whatever needs to be taken care of." *Id*. at 40 She shops for groceries if she is able, runs errands, and transports the children. *Id*. She is able to bathe and dress herself, and handle her own finances. *Id*. She can cook, but she alternates between sitting and standing and needs "breaks in between." *Id*. at 41 She does laundry, but she cannot carry the basket because her hands and shoulders hurt. *Id*. She can wash dishes for short periods and drive. *Id*. She considers her daughter her "right hand." *Id*. at 42 She rests a lot during the day and

does not exercise. *Id*. She does not do anything outside the house and cannot sit through a movie in a theater. *Id*. at 43 She does not take pain medication except for Fioricet, which she takes if her headache is "to the point where [she] can't open [her] eyes, and [she] can't function properly," which is about three to four times a week. *Id*. at 45 The medication makes her tired. *Id*. It may make her nauseous too, but she is nauseous at all times. *Id*. at 46

Gurrola testified that she spends "roughly about 70% of [her] day either at the toilet vomiting or the other way," although she conceded that "70%" might be an overestimation. (Doc. 14-3, p. 46) She hurts everywhere, especial her collarbone, shoulders, lower back, hips, ankles, toes, fingers, and head. *Id*. at 47 She does not take pain medication for her body aches and has not done so since the summer of 2015 because the medication makes her feel worse. *Id*. Her healthcare providers have told her not to push herself. *Id*. at 47-48 She has difficulty lifting a gallon of milk. *Id*. at 48 She can stand for about 10 to 15 minutes before she starts shifting uncomfortably and feeling pain. *Id*. She has not been able to lift her son since he was three-years-old, either because of his growth or her worsening condition. *Id*. at 49 She has taken medication for depression in the past. *Id*. Her brain has not been functioning well since she was tasered in the head by her daughter's girlfriend's father in early 2015. *Id*. at 50-51

Gurrola further testified that she had negative reactions from pain medications such as Topamax and Imitrex. (Doc. 14-3, p. 52) She also had negative reactions to morphine and oxycodone. *Id*. at 52-53 She tried them for a year and a half, and although they seemed to work in the beginning, toward the end, "they were making [her] body hurt more." *Id*. She stated, "They were making my brain so I couldn't function properly." *Id*. at 53

She has difficulty standing up without something to hold on to. (Doc. 14-3, p. 53) She worries about being in the sun too much. *Id*. at 54 When she feels very nauseous, she smokes marijuana. *Id*.

A Vocational Expert (VE), Tracy Young, also testified at the hearing. (Doc. 14-3,

pp. 55-59) She testified that all of Gurrola's prior jobs were light and semiskilled. *Id.* at 55-56 The ALJ gave the VE a hypothetical of an individual of Gurrola's age and background who retained the physical residual functional capacity (RFC) found by the disability determination physicians. *Id.* at 56 The VE testified that such an individual would be able to perform all of the jobs in Gurrola's prior work history. *Id.* Standing or walking four hours in an eight-hour day "would be inherent in the tasks of light work," and "as a clerk she would be sitting most of the time." *Id.* at 57 Such an individual would also be able to perform a full range of sedentary work. *Id.* The ALJ asked the VE if an individual would be able to miss more than five days of work a month, as Bacchus-Morris opined in her RFC. *Id.* The VE testified that an individual would not be able to sustain competitive employment missing more than *one* day a month. *Id.* It might be feasible after more than a year on the job, but that assumes the individual makes it a year. *Id.* at 58

The VE further testified that an individual who could stand for two hours or less; needed to change positions after 30 to 60 minutes of sitting; could walk only a block without rest; could occasionally lift or carry 10 pounds but never lift or carry 20 pounds or more; could occasionally reach or grasp; frequently feel, finger or handle; never kneel, stoop or crouch; and had to lie down during the day would not be able to work. (Doc. 14-3, p. 59) This is the RFC given by Gurrola's treating physician, Bacchus-Morris. (Doc. 14-9, p. 46); (Doc. 14-10, p. 43)

Claim Evaluation

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to

step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC) to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945. If yes, then the claim is denied. *Id*. If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ's Findings

First, the ALJ found that March 31, 2014 was Gurrola's last insured date. (Doc. 14-3, p. 18) At step one of the disability analysis, the ALJ found that "[t]he claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date. . . ."

*Id*.

At step two, the ALJ found that "[t]he claimant has the following severe impairments: lupus, rheumatoid arthritis (RA), fibromyalgia, obesity and degenerative disc disease." (Doc. 14-3, p. 18) Her mental impairment was nonsevere. (Doc. 14-3, p. 19) The ALJ also found that Gurrola's migraines were nonsevere. *Id*.

At step three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments I 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (Doc. 14-3, p. 20)

The ALJ then evaluated Gurrola's residual functional capacity (RFC). The ALJ found that Gurrola had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), "except claimant can lift/carry 20 occasionally and 10 pounds frequently." (Doc. 14-3, p. 20) "Claimant can stand/walk for 4 hours per day and sit for 6 hours in an 8-hour workday." *Id*. "Claimant can never climb ladders/ropes/scaffolds and can occasionally climb ramps/stairs, stoop, kneel, crouch and crawl." *Id*.

Based on this RFC, and the testimony of the VE, the ALJ found that Gurrola was able to perform her past relevant work: Medical Records Clerk, Daycare Worker, and Office Clerk. (Doc. 14-3, pp. 23-24) Accordingly, the ALJ found that Gurrola was not disabled under the Social Security Act from April 1, 2010 through the date of the decision. *Id*. at 24.

Standard of Review

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id*.

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is "more than a mere scintilla but less than a preponderance." *Id*.

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id*.

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, she must justify her decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Discussion: Subjective Symptom Testimony

First, the court will consider Gurrola's argument that the ALJ erred when he improperly discounted her testimony about the severity of her symptoms.

If there is medical evidence of underlying impairments "and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (punctuation modified). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits

- 9 -

would be available for the asking . . . ." *Id*. "In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation." *Id*. "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id*.

In this case, the ALJ stated as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Doc. 14-3, p. 21) Apparently, the ALJ found "medical evidence of underlying impairments" and "no evidence of malingering." *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Accordingly, the ALJ was required to give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of [her] symptoms." *Id*. He did not do so.

The ALJ further stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." He did not, however, "identify what parts of the claimant's testimony were not credible and why." *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1103 (9th Cir. 2014). This statement, therefore, does not add any support to the ALJ's credibility assessment. *Id*.

The ALJ specifically addressed Gurrola's credibility in the following passage:

> Undersigned gives reduced weight to the allegations and testimony of the claimant with respect to the extent that her impairments preclude the performance of work-related activities. For example, claimant stopped taking pain medication. Further, she is able to care for her young son throughout the day.

- 10 -

(Doc. 14-3, p. 23) The court will address these arguments in turn.

The ALJ implies correctly that an *unexplained* failure to take pain medication is a legitimate reason for discounting the claimant's assertion of disabling pain. But that is not the case here. Gurrola testified that she no longer takes pain medications. She explained that this is because all of the medications she tried in the past caused adverse side effects or were ineffective. Her failure to take pain medication, therefore, is not "unexplained."

Gurrola testified that she tried different pain medications such as Topamax and Imitrex, but they either did not work or they made her feel stiff or sick. (Doc. 14-3, p. 52) She even tried morphine and oxycodone. *Id*. at 52-53. They seemed to be working at first, but after a year and a half, "they were making [her] body hurt more." *Id*. She stated, "They were making my brain so I couldn't function properly." *Id*. at 53

The medical record indicates that Gurrola tried Fioricet, but it caused nausea and fatigue. (Doc. 14-3, p. 46) Methotrexate caused nausea, vomiting, and headaches. (Doc. 14-8, p. 90) And, an injection of Enbrel caused a "hot, red, swollen" reaction. (Doc. 14-8, p. 87)

Gurrola's failure to take pain medication is not "unexplained." *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Accordingly, her failure to take pain medication does not support the ALJ's decision to discount her subjective complaints.

The ALJ also noted that Gurrola takes care of her five-year-old son. Under certain circumstances, a claimant's record of daily activities could be evidence that she is exaggerating the extent of her limitations, for example if she engaged in activities inconsistent with her reported symptoms. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). That inference cannot be made, however, if the claimant needs assistance in performing such activities or is regularly unable to do so because of pain. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably

preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Critical differences between activities that are and are not transferable to a work setting include flexibility in scheduling, ability to receive assistance, and lack of a minimum standard of performance. *Garrison*, 759 F.3d at 1016.

Gurrola testified that she cares for her son from Friday afternoon to Monday evening. (Doc. 14-3, pp. 39-40) She can cook, but she must alternate between sitting and standing, and she takes breaks in between. *Id*. at 41 She can put the laundry in the machine, but she cannot carry the laundry to the laundry room. *Id*. She can wash dishes, but she has to do so "in little spurts" because her hands cramp and her back aches. *Id*.

Gurrola also testified that she regularly receives help from her daughter, whom she calls her "right hand." *Id*. at 42. She also gets help from her fiancé and his mother when she has custody of her son. (Doc. 14-7, p. 33) Gurrola's daily activities do not appear to be inconsistent with her alleged limitations.

In her response, the Commissioner argues that Gurrola's record of daily activities is relevant because "they were inconsistent with the limitations she endorsed." (Doc. 17, p. 9) The Commissioner, however, does not specify exactly what daily activities are inconsistent with Gurrola's alleged limitations. For example, Gurrola testified that she has difficulty lifting a gallon of milk. (Doc. 14-3, p. 48) It does not appear that her reported daily activities are inconsistent with this alleged limitation. In fact, she explained that while she can put laundry in the machine, she cannot lift the laundry basket. (Doc. 14-3, pp. 39-40) Gurrola also testified that she can stand for only about 10 to 15 minutes before she starts shifting uncomfortably and feeling pain. *Id*. at 48 It does not appear that her record of daily activities is inconsistent with this limitation either. In fact, she explained that she washes the dishes "in little spurts" because of back pain. *Id*. at 41 She also stated that while she can cook, she must alternate between sitting and standing. *Id*. at 41

The Commissioner further argues that Gurrola's treatment record is inconsistent

with her subjective symptom testimony. The Commissioner concedes that a claimant's allegations cannot be rejected "on the sole ground that they are not fully corroborated by objective medical evidence." (Doc. 17, p. 10) Nevertheless she argues they are a relevant factor if they "undercut [the claimant's] allegations about the seriousness of her physical problems." *Id*. The Commissioner finds it significant that the ALJ cited treatment records that indicate Gurrola "had normal range of motion and strength in her extremities, intact cranial nerves, normal reflexes, no sensory deficits, was able to heel-toe walk, negative straight leg raises on the right, and a normal gait." *Id*. Moreover, her MRI scan shows she had "a normal back save for some facet degeneration." *Id*. (punctuation modified) The Commissioner asserts that "[s]uch findings do not support Plaintiff's claim of disabling physical problems." *Id*. The Commissioner does not, however, explain why these particular medical findings undercut Gurrola's subjective symptom testimony. And without further explanation, the Commissioner's argument is entirely speculative.

Many of the findings to which the Commissioner refers, such as the findings that Gurrola had normal range of motion and strength in her extremities, intact cranial nerves, normal reflexes, no sensory deficits, was able to heel-toe walk, and had negative straight leg raises on the right were made by nurse practitioner Albert Willison at the Southwest Sports and Spine facility. (Doc. 14-9, p. 96) Gurrola sought treatment at this facility for "pain management and pain meds." (Doc. 14-9, p. 95) The court notes that during this time, she was prescribed the painkiller oxycodone. *Id*. at 96 Apparently, her treatment providers at that facility did not think these findings were inconsistent with her allegations of significant pain. The ALJ may have thought differently, but the ALJ is not a medical expert. If he believed that these medical findings were inconsistent with Gurrola's allegation of disabling pain, he should have provided an explanation and support for his conclusions. He did not do so here. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (An ALJ who is not qualified as a medical expert may not make his own assessment as to the claimant's physical condition.); *see, e.g., Cox v.*

*Colvin*, 2014 WL 6882390, 5 (C.D.Cal. 2014) ("Absent expert medical assistance, the ALJ could not competently translate the medical evidence into a residual functional capacity assessment.").

The court concludes that the ALJ did not provide "specific, clear and convincing reasons" to justify his decision to discount Gurrola's testimony about the severity of her symptoms. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

Discussion: Treating Physician's Opinion

Gurrola further argues that the ALJ improperly discounted the opinion of her treating physician, Amanda Bacchus-Morris. *See* (Doc. 14-10, p. 43) "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and convincing reasons for doing so. *Id*. The ALJ may reject the treating physician's contradicted opinion only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified).

In this case, Bacchus-Morris's opinion of disability is contradicted by the medical opinions of the non-examining state agency physicians. Accordingly, the ALJ's decision to discount Bacchus-Morris's opinion must be supported by "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (punctuation modified). The court finds that the ALJ failed to do so, and Bacchus-Morris's opinions were discounted erroneously.

The ALJ explained that he gave Bacchus-Morris's opinions "reduced weight" because "the medical evidence of record does not support such restrictive limitations and the RFC appears to be based upon claimant's subjective complaints." (Doc. 14-3, p. 23) The court does not find this explanation sufficient.

If the record supports the ALJ's decision to discount a claimant's credibility, the ALJ is justified in discounting a physician's opinion that is based on that claimant's subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). But here, the record does *not* support the ALJ's adverse credibility assessment of the claimant. (*see above*) Accordingly, the ALJ was not justified in discounting the treating physician's opinion simply because it may be based in part on the claimant's subjective complaints.

The ALJ further explained that he discounted the treating physician's opinion because "the medical evidence of record does not support such restrictive limitations." (Doc. 14-3, p. 23) The ALJ, however, failed to explain what medical evidence he believed was inconsistent with the limitations identified by the treating physician. The statement, therefore, is too general to support the ALJ's decision to discount the opinion of the treating physician. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102-1103 (9th Cir. 2014).

The court further notes that Gurrola was diagnosed with fibromyalgia, a disease characterized by pain unaccompanied by any supporting physical evidence. *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (punctuation modified). "A person with fibromyalgia may have muscle strength, sensory functions, and reflexes that are normal." *Id.* Accordingly, the fact that the medical evidence of record does not contain physical test results that verify Gurrola's level of disabling pain is not entirely unexpected.

Discussion: Remedy

The ALJ improperly discounted the treating physician's opinion and improperly discounted Gurrola's subjective testimony of the severity of her symptoms. The final decision of the Commissioner must be reversed. Ordinarily, if the Commissioner is reversed, the court should remand for further administrative proceedings. The court may, however, remand for payment of benefits if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed

to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, all three requirements are fulfilled. "The record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. As the Ninth Circuit observed in *Garrison*, "our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison v. Colvin*, 759 F.3d 995, 1021-1022 (9th Cir. 2014).

Second, the ALJ failed to provide specific and legitimate reasons for discounting the treating physician's opinion and failed to provide clear and convincing evidence to discount Gurrola's own testimony. *See above*. Third, if Bacchus-Morris's opinion and Gurrola's testimony were credited as true, Gurrola necessarily would be found disabled. The vocational expert testified that if Gurrola had the functional limitations described by Bacchus-Morris, then she would be disabled. (Doc. 14-3, p. 59); (Tr. 58); (Doc. 14-9, p. 46); (Doc. 14-10, p. 43); (Tr. 766)

All three parts of the *Garrison* test are fulfilled. Furthermore, the court has examined the entire record and finds no reason to seriously doubt that Gurrola is disabled. *See Garrison*, 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

The Commissioner argues to the contrary that the court should remand for further proceedings because "the record contains evidentiary conflicts, including inconsistencies between Plaintiff's complaints and (1) her improvement with treatment, (2) her lack of pain medication, (3) her daily activities, and (4) the treatment records." (Doc. 17, p. 12)

(*citing* Tr. 20-22)  The court does not agree.

On the issue of improvement, the Commissioner notes that Gurrola "reported Methotrexate was helping, that she had more energy, was starting to exercise and lose weight, and her joints were feeling better."  (Doc. 17, p. 8)  Unfortunately, as the ALJ noted, the Methotrexate caused her nausea, and she subsequently stopped taking it.  (Tr. 21)  The Commissioner further notes that Gurrola "started taking Embrel and reported that it 'helps her.'"  (Doc. 17, p. 8)  Unfortunately, the Embrel injection caused a "hot, red, swollen" reaction, and Gurrola had to stop taking that as well.  *See* (Doc. 14-8, p. 87)  So, while it is true that Gurrola did experience improvement with treatment for short periods of time, these improvements did not last long enough to materially affect her ability to work.

The Commissioner further argues there is an inconsistency between Gurrola's complaints and her lack of pain medication, her daily activities, and the treatment record.  But as the court explained above, these factors, when considered in more detail, are not inconsistent with Gurrola's claim to disability.

In addition, the Commissioner argues that Gurrola's employment record is inconsistent with her subjective allegations of disabling pain.  She notes that Gurrola worked part-time after her alleged onset date.  The Commissioner is correct; Gurrola did work part-time after her alleged onset date.  Her part-time work, however, does not appear to have been significant gainful activity.  Moreover, the ALJ did not find any inconsistencies between her alleged functional limitations and the duties that she performed while working.  Accordingly, the court does not find Gurrola's record of part-time work to be significant.

Finally, the Commissioner notes that the "opinions of Drs. Armstrong and Strause, . . . are supportive of the ALJ's conclusions. . . ."  (Doc. 17, p. 13)  That is true; they are.  But the opinions of the treating physician are to the contrary, and a treating physician's opinions trump the opinions of the non-examining state agency physicians absent specific and legitimate reasons to the contrary.  Accordingly,

| | |
|---|---|
| 1 | IT IS ORDERED that the final decision of the Commissioner is reversed. The |
| 2 | case is remanded for payment of benefits. |
| 3 | The Clerk of the Court is directed to prepare a judgment and close this case. |
| 4 | |
| 5 | Dated this 21st day of August, 2018. |

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge